IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

ROBERT WOLFE,

        Plaintiff,

                                3:13-CV-2180-PK

v.                                FINDINGS AND
                                RECOMMENDATION

KATE BROWN,

        Defendant.

PAPAK, Magistrate Judge:

       Plaintiff Robert Wolfe filed this action against defendant Kate Brown in her official capacity as the Oregon Secretary of State on December 11, 2013. The parties' dispute arises out of underlying quasi-judicial state administrative proceedings initiated by defendant in her official capacity against Wolfe in connection with Wolfe's alleged violations of Oregon election law. By and through his complaint, Wolfe seeks this court's declaration that Brown's involvement in the state administrative proceedings violated Wolfe's procedural due process rights under the Fourteenth Amendment, an injunction under 42 U.S.C. § 1983 to prohibit Brown from enforcing the Final Order resulting from the state administrative proceedings (now on judicial review

Page 1 - FINDINGS AND RECOMMENDATION

before the Oregon Court of Appeals) in any way, and award of his attorney fees and costs. Brown challenges this court's subject-matter jurisdiction to consider Wolfe's claims.

Now before the court is Brown's motion (#7) to dismiss Wolfe's claims. I have considered the motion, oral argument on behalf of the parties, and all of the pleadings and papers on file. For the reasons set forth below, I conclude that this court lacks subject-matter jurisdiction to consider the merits of Wolfe's claims, and therefore recommend that Brown's motion be granted under Federal Civil Procedure Rule 12(b)(1) on jurisdictional grounds and otherwise denied as moot, and that Wolfe's claims be dismissed for lack of subject-matter jurisdiction.

## LEGAL STANDARD

Brown's motion is styled as a motion to dismiss for failure to state a claim, and both parties appear to assume, without argument, that the legal standard governing the motion is that provided by Federal Civil Procedure Rule 12(b)(6). However, because the bulk of Brown's arguments in favor of dismissal address this court's subject-matter jurisdiction, those arguments are properly to be considered under Federal Civil Procedure Rule 12(b)(1), and only in the event of a determination that this court has (and may properly exercise) subject-matter jurisdiction over Wolfe's claims could Brown's merits arguments properly be considered under Rule 12(b)(6). Because I find that this court lacks subject-matter jurisdiction over Wolfe's claims, I address Brown's jurisdictional arguments under Rule 12(b)(1), and do not address her merits arguments herein.

The federal courts are courts of limited jurisdiction. *See, e.g., Exxon Mobil Corp. v. Allapattah Servs.*, 545 U.S. 546, 552 (2005), *citing Kokkonen v. Guardian Life Ins. Co. of*

Page 2 - FINDINGS AND RECOMMENDATION

*America*, 511 U.S. 375, 377 (1994). As such, the courts presume that causes of action "lie[] outside this limited jurisdiction, and the burden of establishing the contrary rests upon the party asserting jurisdiction." *Kokkonen*, 511 U.S. at 377; *see also, e.g., Vacek v. United States Postal Serv.*, 447 F.3d 1248, 1250 (9th Cir. 2006).

A motion under Federal Civil Procedure Rule 12(b)(1) to dismiss for lack of subject-matter jurisdiction may be either "facial" or "factual." *See Safe Air v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004), *citing White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000). In a facial attack on subject-matter jurisdiction, the moving party asserts that a plaintiff's allegations are insufficient on their face to invoke federal jurisdiction, whereas in a factual attack, the moving party disputes the factual allegations that, if true, would give rise to subject-matter jurisdiction. Where a defendant raises a facial challenge to subject-matter jurisdiction, the factual allegations of the complaint are presumed to be true, and the motion may be granted only if the plaintiff fails to allege an element necessary for subject matter jurisdiction. *See Savage v. Glendale Union High Sch.*, 343 F.3d 1036, 1039 n.1 (9th Cir. 2003). By contrast, where a defendant raises a factual challenge to federal jurisdiction, "the district court may review evidence beyond the complaint without converting the motion to dismiss into a motion for summary judgment," *Safe Air v. Meyer*, 373 F.3d at 1039, *citing Savage*, 343 F.3d at 1039 n.2, and "need not presume the truthfulness of the plaintiff's allegations," *id.*, *citing White*, 227 F.3d at 1242. The challenge at issue here is a facial challenge to the court's jurisdiction.

"Defective allegations of jurisdiction may be amended, upon terms, in trial or appellate courts." 28 U.S.C. § 1653. It is improper to dismiss an action based on a defective allegation of jurisdiction without leave to amend "unless it is clear, upon de novo review, that the complaint

Page 3 - FINDINGS AND RECOMMENDATION

could not be saved by amendment." *Snell v. Cleveland, Inc.*, 316 F.3d 822, 828 n.6 (9th Cir. 2002), *citing Lee v. City of Los Angeles*, 250 F.3d 668, 692 (9th Cir. 2001).

## FACTUAL BACKGROUND[1]

### I. The Parties

Plaintiff Wolfe is an individual resident of Oregon, a political activist, and a recent unsuccessful candidate for the office of the Oregon Secretary of State.

Defendant Brown is and at all material times was the Oregon Secretary of State. She appears in her official capacity. As Oregon's Secretary of State, Brown is responsible for enforcement of Oregon election laws.

### II. Legal Framework Governing the Underlying Quasi-Judicial Administrative Proceedings

In the event the Oregon Secretary of State (the "Secretary") receives a complaint alleging that a violation of Oregon election law has occurred, the Secretary is required by statute "immediately" to consider the complaint and to conduct any necessary investigation to determine its validity. Or. Rev. Stat. 260.345(3). "If the Secretary of State believes after an investigation under [Section 260.345(3)] . . . that a violation of an election law or rule has occurred, the [S]ecretary" must immediately report the violation, if subject to criminal penalties, to the Oregon Attorney General, or, if the violation is subject to civil penalties only, "may impose a civil penalty under ORS 260.995." Or. Rev. Stat. 260.345(4).

In the event the Secretary elects to impose a civil penalty under Section 260.995, such

---

[1] Except where otherwise indicated, the following recitation constitutes my construal of Wolfe's allegations in light of the legal standard governing motions to dismiss for lack of subject-matter jurisdiction under Federal Civil Procedure Rule 12(b)(1).

Page 4 - FINDINGS AND RECOMMENDATION

penalty "shall become due and payable 10 days after the order imposing the civil penalty becomes final by operation of law or on appeal. A person against whom a civil penalty is to be imposed shall be served with a notice in the form provided in ORS 183.415." Or. Rev. Stat. 183.745(2); *see also* Or. Rev. Stat. 260.995(3). Such notice must include:

   (a)   A statement of the party's right to hearing, with a description of the procedure and time to request a hearing, or a statement of the time and place of the hearing;

   (b)   A statement of the authority and jurisdiction under which the hearing is to be held;

   (c)   A reference to the particular sections of the statutes and rules involved;

   (d)   A short and plain statement of the matters asserted or charged;

   (e)   A statement indicating whether and under what circumstances an order by default may be entered; and

   (f)   A statement that active duty servicemembers have a right to stay proceedings under the federal Servicemembers Civil Relief Act and may contact the Oregon State Bar or the Oregon Military Department for more information.

Or. Rev. Stat. 183.415. In addition, the notice must include a statement that, if the recipient is not a natural person, it must be represented by an attorney at the hearing. Or. Rev. Stat. 260.995(3).

The person receiving the notice "shall have 20 days from the date of service of the notice . . . in which to make written application for a hearing. . . . If no application for a hearing is made within the time allowed, the agency may make a final order imposing the penalty." Or. Rev. Stat. 183.415(3). In the event the recipient of the notice requests a hearing, the hearing must be provided and must be "conducted as a contested case hearing pursuant to the applicable

Page 5 - FINDINGS AND RECOMMENDATION

provisions of ORS 183.413 to 183.470."

Under Oregon statutory law, such contested case hearings must be presided over by an administrative law judge ("ALJ") provided by Oregon's Office of Administrative Hearings, an independent state office established within the Oregon Employment Department. *See* Or. Rev. Stat. 183.635; *see also* Or. Rev. Stat. 183.605(1). Contested case hearings are adversary proceedings at which all parties have a right to be represented by counsel, *see* Or. Rev. Stat. 183.417(1), 183.452(1), to "respond and present evidence and argument on all issues" properly before the ALJ, *see* Or. Rev. Stat. 183.417(1), to subpoena witnesses, *see* Or. Rev. Stat. 183.440, to cross-examine testifying witnesses, *see* Or. Rev. Stat. 183.450(3), to submit rebuttal evidence, *see id.*, to have a record made of the proceedings, *see* Or. Rev. Stat. 183.417(10), and to be informed of any *ex parte* communications on the facts with the ALJ, *see* Or. Rev. Stat. 183.417(7). Only evidence offered and made a part of the record at such a hearing may be considered in the determination of the case, and evidence is only admissible at such a hearing if it is "of a type commonly relied upon by reasonably prudent persons in the conduct of their serious affairs." Or. Rev. Stat. 183.450(1), (2).

The ALJ presiding over such a hearing is required to "prepare and serve on the agency and all parties to a contested case hearing a proposed order, including recommended findings of fact and conclusions of law. The proposed order shall become final after the 30th day following the date of service of the proposed order, unless the agency within that period issues an amended order." Or. Rev. Stat. 183.464. Under applicable Oregon Administrative Rules, the Secretary is only permitted to amend the ALJ's proposed order after first determining "that there is clear and convincing evidence in the record that the finding made by the administrative law judge was

Page 6 - FINDINGS AND RECOMMENDATION

wrong." O.A.R. 137-003-0665(4).

The person against whom a final order imposing such a civil penalty is issued may appeal the final order for review by the Oregon Court of Appeals. *See* Or. Rev. Stat. 183.480(1), 183.482(1). A party's request for judicial review has the effect of staying enforcement of the final order in question. *See* Or. Rev. Stat. 183.745(2). The Court of Appeals' decision on review may be further appealed to the Oregon Supreme Court. *See* Or. Rev. Stat. 2.520.

### III.    History of the Parties' Dispute

In 2012, Wolfe was the chief petitioner in connection with Oregon Initiative Petition 24. On April 23, 2012, the Secretary served Wolfe with a notice of intent to impose a civil penalty in the amount of $65,000 under Or. Rev. Stat. 260.995, for violations of Article IV, Section 1b of the Oregon constitution (prohibiting compensation of petition circulars on a per-signature basis) arising out of Wolfe's activities in connection with OIP 24. On May 14, 2012, Wolfe timely requested a contested case hearing to resist imposition of the proposed civil penalty. Wolfe's hearing was assigned to Senior ALJ Alison Greene Webster. On July 25, 2012, Wolfe successfully requested that proceedings in connection with the proposed civil penalty be stayed.

On August 21, 2012, while the stay of the civil proceedings against him remained in effect, Wolfe filed paperwork indicating his intention to campaign for the position of Oregon Secretary of State as a member of the Progressive Party. Voting closed in connection with the Secretary of State race effective November 6, 2012, and Brown was re-elected as the Secretary. Wolfe takes the position that Brown demonstrated bias against him by and through statements she made during the two-and-one-half months of his campaign for office (and likewise during the pendency of the stay of the civil proceedings against him).

Page 7 - FINDINGS AND RECOMMENDATION

On January 7, 2013, after the election results were final and after the stay of administrative proceedings had been lifted, a hearing commenced before ALJ Webster to consider the proposed civil penalty. That same day, Wolfe moved to dismiss the proceedings on the ground of Brown's "obvious and documented bias" against him, and the ALJ denied the motion, purportedly without reading it. The hearing was conducted over the course of ten days, and concluded on June 17, 2013. On July 5, 2013, ALJ Webster issued a proposed order recommending imposition of the civil penalty requested by the Secretary on April 23, 2012.

On August 5, 2013, Wolfe timely filed written exceptions to the ALJ's proposed order. On September 12, 2013, the Secretary issued a final order affirming the proposed civil penalty in the amount of $65,000. On October 3, 2013, Wolfe timely petitioned for review of the Secretary's final order to the Oregon Court of Appeals. That review remains ongoing at this time, and Wolfe's unsuccessful motion to dismiss on grounds of Brown's purported bias remains a part of the contested case record before the reviewing court.

Wolfe filed this action on December 11, 2013. In support of his claims, Wolfe expressly takes the position that Brown is biased against him and that her bias rendered the procedural safeguards available under Oregon's contested case hearing statutes and regulations inadequate as a matter of constitutional law to satisfy his due process rights in connection with the administrative proceedings. Wolfe neither alleges nor takes the position that either ALJ Webster or the Oregon Court of Appeals either harbor or demonstrate similar bias.

## ANALYSIS

By and through her motion, Brown argues that Wolfe's claims should be dismissed on the jurisdictional or quasi-jurisdictional grounds of Eleventh-Amendment immunity and *Younger*

Page 8 - FINDINGS AND RECOMMENDATION

abstention, and in the alternative that Wolfe fails to state a claim upon which relief may be granted because Brown enjoys judicial immunity in connection with the complained-of conduct and/or because Section 1983 is inapplicable to claims against state officials acting in a quasi-judicial capacity. Because for reasons set forth below I agree that this court may not properly exercise subject-matter jurisdiction to consider the merits of Wolfe's claims, I address only Brown's proffered jurisdictional arguments in this Findings and Recommendation.

## I. Eleventh-Amendment Immunity

It is well established that a state government or governmental body cannot be sued without its consent, pursuant to the Eleventh Amendment to the United States Constitution:

> That a State may not be sued without its consent is a fundamental rule of jurisprudence having so important a bearing upon the construction of the Constitution of the United States that it has become established by repeated decisions of this court that *the entire judicial power granted by the Constitution does not embrace authority to entertain a suit brought by private parties against a State without consent given*: not one brought by citizens of another State, or by citizens or subjects of a foreign State, because of the Eleventh Amendment; and not even one brought by its own citizens, because of the fundamental rule of which the Amendment is but an exemplification.

*Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98-99 (1984) (emphasis original), quoting *Ex parte State of New York*, 256 U.S. 490, 497 (1921); *see also, e.g., id.* at 99, n.8 ("The limitation deprives federal courts of any jurisdiction to entertain such claims. . . ."); *Quillin v. Oregon*, 127 F.3d 1136, 1138 (9th Cir. 1997) ("in the absence of a waiver by Oregon of its Eleventh Amendment immunity, federal courts lack jurisdiction to review" claims against it). Eleventh-Amendment immunity generally extends to suits brought by individuals against state agencies and state officials. *See, e.g., Seminole Tribe v. Fla.*, 517 U.S. 44, 54 (1996). The applicability of Eleventh-Amendment immunity constitutes a question of subject matter

Page 9 - FINDINGS AND RECOMMENDATION

jurisdiction. *See, e.g., McCarthy v. United States*, 850 F.2d 558, 560 (9th Cir. 1988).

An exception to Eleventh-Amendment immunity provides that an individual's action may go forward against a state official in federal court where the plaintiff seeks only "prospective, but not compensatory or other retrospective relief" in connection with a challenge to "the constitutionality of official conduct enforcing state law." *Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 145 (1993); *see also Ex parte Young*, 209 U.S. 123 (1908). This exception, known as the *Ex parte Young* doctrine, "is narrow: It applies only to prospective relief, [and] does not permit judgments against state officers declaring that they violated federal law in the past. . . ." *Puerto Rico Aqueduct & Sewer Auth.*, 506 U.S. at 146 (citations omitted).

As noted above, Wolfe seeks this court's "declaration that Defendant Brown's actions violated Wolfe's right to procedural due process under the Fourteenth Amendment to the United States Constitution," Complaint, ¶ 20, and, on the asserted ground that Brown's participation in the administrative civil enforcement proceedings against constituted the violation of his Fourteenth Amendment rights referenced in his claim for declaratory relief, an injunction to enjoin enforcement of the Final Order issued in connection with those proceedings, *see* Complaint, ¶ 23. Without acknowledging the patently and expressly retrospective nature of his claim for declaratory relief, Wolfe argues that his claim for injunctive relief can be construed as purely prospective, and on that ground argues that it can be construed as falling within the scope of the *Ex parte Young* doctrine.

Wolfe's position is not tenable. Absent a declaration or a finding that the administrative proceedings were conducted in a manner that violated Wolfe's due process rights, no grounds exist or could exist for issuing the requested injunction, and notwithstanding his insistence that

Page 10 - FINDINGS AND RECOMMENDATION

an order to enjoin future enforcement can be construed as prospective, Wolfe offers no argument or precedent to the contrary. Wolfe's injunctive relief claim is premised on a violation of his due process rights that, as alleged, has already occurred, and his declaratory relief claim is patently retrospective in nature. Because Oregon has not waived its Eleventh-Amendment immunity for actions such as Wolfe's, and because the relief Wolfe seeks cannot plausibly be deemed purely prospective, the *Ex parte Young* doctrine is inapplicable and this court lacks subject-matter jurisdiction to consider the merits of Wolfe's claims under the Eleventh Amendment. Because this jurisdictional deficiency cannot be cured by amendment of Wolfe's pleadings, Wolfe's claims should therefore be dismissed.

## II.     *Younger* Abstention

Even if this court had subject-matter jurisdiction over Wolfe's claims, it would be improper for the court to exercise that jurisdiction, pursuant to the doctrine of *Younger* abstention. The federal courts are required to abstain from the exercise of jurisdiction where the exercise of otherwise proper federal jurisdiction would constitute an intrusion into or interference with an ongoing, parallel state proceeding, where the state proceeding is (i) a criminal prosecution, (ii) a civil enforcement proceeding "akin" to a criminal prosecution, or (iii) a civil proceeding implicating the state courts' ability to perform their judicial functions. *See Younger v. Harris*, 401 U.S. 37, 44-45 (1971); *see also Sprint Communs., Inc. v. Jacobs*, 134 S. Ct. 584, 591 (2013); *New Orleans Public Service, Inc. v. Council of City of New Orleans*, 491 U.S. 350, 368 (1989). In *Samuels v. Mackell*, 401 U.S. 66, 73 (1971) the United States Supreme Court established that the principle of abstention first announced in *Younger* is applicable to federal declaratory judgment actions, and in *Ohio Civil Rights Comm'n v. Dayton Christian Sch.*,

Page 11 - FINDINGS AND RECOMMENDATION

*Inc.*, 477 U.S. 619, 627, 627 n. 2 (1986), the United States Supreme Court affirmed that *Younger* abstention is applicable with equal force to state administrative proceedings, "so long as in the course of those proceedings the federal plaintiff would have a full and fair opportunity to litigate his constitutional claim." *Dayton*, 477 U.S. at 627; *see also Fresh International Corp. v. Agricultural Labor Relations Bd.*, 805 F.2d 1353, 1357 (9th Cir. 1986) ("*Younger* principles also apply to pending state administrative proceedings that involve important state interests").

The United States Supreme Court recently clarified the circumstances under which *Younger* abstention may apply in connection with state civil enforcement proceedings, including administrative civil enforcement proceedings such as those at issue here:

> Our decisions applying *Younger* to instances of civil enforcement have generally concerned state proceedings "akin to a criminal prosecution" in "important respects." . . . Such enforcement actions are characteristically initiated to sanction the federal plaintiff, *i.e.*, the party challenging the state action, for some wrongful act. . . . In cases of this genre, a state actor is routinely a party to the state proceeding and often initiates the action. . . . Investigations are commonly involved, often culminating in the filing of a formal complaint or charges.

*Sprint Communs.*, 134 S. Ct. at 592 (citations omitted). The *Sprint Communs.* court expressly held that the *Younger* abstention doctrine was applicable to civil enforcement proceedings only when such proceedings were akin to criminal prosecutions in those specified respects, and that the factors set forth in its previous decision in *Middlesex County Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 431-432 (1982) – which indicated that abstention was required where (1) there were pending state judicial proceedings, (2) the state proceedings implicated important state interests, and (3) the state proceedings provided an adequate opportunity to raise those federal questions that had been brought before the federal court – were "not dispositive" but rather merely "*additional* factors appropriately considered by the federal court before invoking

Page 12 - FINDINGS AND RECOMMENDATION

*Younger*." *Sprint Communs.*, 134 S. Ct. at 592 (emphasis original).

Although *Younger* abstention is generally mandatory if the foredescribed requirements are met, under certain extraordinary circumstances a federal court may nevertheless exercise jurisdiction notwithstanding satisfaction of all applicable requirements:

> Although a federal court is normally required to abstain if the . . . *Younger* test [is] satisfied, abstention is inappropriate in the "extraordinary circumstance" that the state tribunal is incompetent by reason of bias. *See Gibson v. Berryhill*, 411 U.S. 564, 577-79, 36 L. Ed. 2d 488, 93 S. Ct. 1689 (1973). However, "one who alleges bias 'must overcome a presumption of honesty and integrity in those serving as adjudicators.'" *Kenneally* [*v. Lungren*], 967 F.2d [329,] 333 [(9th Cir. 1992)] (quoting *Withrow v. Larkin*, 421 U.S. 35, 47, 43 L. Ed. 2d 712, 95 S. Ct. 1456 (1975)).

*Hirsh v. Justices of the Supreme Court*, 67 F.3d 708, 713 (9th Cir. 1995). In addition, abstention is inappropriate where the state proceedings at issue are patently unconstitutional. *See id.* at 714.

I agree with Brown that the civil enforcement proceedings against Wolfe are "akin" to a criminal prosecution in all of the respects required under the *Sprint Communs.* test. That is, it is clear that (i) the proceedings were initiated to sanction Wolfe for a wrongful act, namely the violation of Oregon election law; (ii) the proceedings were initiated by the Secretary, a state actor, who was also a party to the state proceedings; and (iii) the proceedings were initiated pursuant to a state investigation of Wolfe's conduct resulting in formal charges of wrongdoing. Moreover, I further agree with Brown that each of the non-dispositive but "appropriately considered" *Middlesex* factors mitigates in favor of mandatory abstention under the *Younger* doctrine, in that (iv) the state proceedings remain pending on judicial review at this time, (v) the civil-penalty proceedings implicate an important state interest in maintaining the integrity of Oregon's electoral procedures, and (vi) Wolfe has, and will continue to have, a full

Page 13 - FINDINGS AND RECOMMENDATION

and fair opportunity to litigate the federal constitutional issues raised by his claims in this action.[2]

Finally, I agree with Brown that (vii) granting the relief Wolfe seeks in this action would have the practical effect of enjoining the ongoing state proceedings, and to that extent would constitute intrusion into or interference with those proceedings. Absent extraordinary circumstances establishing that the state tribunal is incompetent due to bias or that the administrative proceedings were patently unconstitutional, abstention is therefore mandatory under *Younger* and its progeny.[3]

---

[2] As to Wolfe's opportunity to litigate his constitutional concerns before the Oregon Court of Appeals as it considers his petition for judicial review, it is both clear and undisputed that the state appeals court is competent to consider and adjudicate Wolfe's Fourteenth Amendment due process rights. *See Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1, 15 (1987) ("when a litigant has not attempted to present his federal claims in related state-court proceedings, a federal court should assume that state procedures will afford an adequate remedy, in the absence of unambiguous authority to the contrary"); Or. Rev. Stat. 183.482(8)(a), (8)(b)(C); *see also, e.g., State v. Harris*, 260 Or. App. 154, 155 (2013) (overturning underlying administrative decision on the basis of a violation of the petitioner's Fourteenth Amendment due process rights in connection with the presentation of evidence). It is in addition clear that the Oregon Court of Appeals has available to it a full range of potential remedies in disposition of Wolfe's petition for review of the Secretary's decision, including affirmation of the decision, outright reversal of the decision, or remand for further administrative proceedings in connection with which Wolfe would be granted the opportunity to conduct bias-related discovery and to present evidence of the Secretary's putative bias and/or of the manner in which her purported bias improperly influenced the civil enforcement proceedings. *See* Or. Rev. Stat. 183.482(7), (8). Finally, while the Oregon Court of Appeals owes state agencies a duty carefully to consider such agencies' interpretations of statutes within the scope of their own administrative authority, *see, e.g., McPherson v. Employment Division*, 285 Or. 541, 549 (1979), *Van Ripper v. Liquor Cont. Com.*, 228 Or. 581, 593 (1961), it owes no deference to administrative decisions on review to the extent those decisions require interpretation of other statutes or rules, such as the constitutional due process rights at issue here, *see Springfield Educ. Ass'n v. Springfield Sch. Dist. No.19*, 290 Or. 217, 221-223 (1980).

[3] Wolfe takes exception to this application of the *Younger* abstention doctrine on the grounds that neither the United States Supreme Court nor the Ninth Circuit have ever held that an administrative proceeding followed by subsequent state-court judicial review constitute a "unitary process" for *Younger* purposes. Wolfe's observation is accurate. However, the *Sprint Communs.* court expressly "assume[d] without deciding. . . that an administrative adjudication

Page 14 - FINDINGS AND RECOMMENDATION

Wolfe argues not merely that the bias exception is applicable here, but moreover that, because he has alleged both Brown's bias and that her bias so polluted the administrative proceedings as to constitute a constitutional deprivation, this court is required at this pleading stage of these proceedings as a matter of law to assume the truth of Wolfe's allegations and to find the state tribunal constitutionally inadequate. I disagree. First, assuming the truth of all of Wolfe's allegations, Wolfe alleges that Brown's bias against him arose out of Wolfe's status as a rival for the state office she holds, and that status (and therefore likewise Brown's alleged bias) did not exist at the time Brown conducted her investigation of Wolfe's electoral activities, concluded that Wolfe had violated Oregon election law, or instituted the civil enforcement proceedings against him. Second, on that same assumption, Wolfe does not allege or argue that either the ALJ who presided over ten days of evidence presentation and argument in connection with the charges leveled against Wolfe or the Oregon Court of Appeals currently reviewing the civil enforcement proceedings for legal error harbor any bias against him. Under the circumstances, Wolfe has failed to overcome the presumption of honesty and integrity in the ALJ and the state appeals court, and the bias exception to the doctrine of *Younger* abstention is inapplicable. *See Hirsh*, 67 F.3d at 713, *quoting Kenneally v. Lungren*, 967 F.2d 329, 333 (9th Cir. 1992), *quoting Withrow v. Larkin*, 421 U.S. 35, 47 (1975); *see also Gibson v. Berryhill*, 411

---

and the subsequent state court's review of it count as a 'unitary process' for *Younger* purposes," *id.* at 592, and noted that the court in *New Orleans Public Service* had done likewise, *id.*, citing *New Orleans Public Service*, 491 U.S. at 369. Because, here, it is clear that Wolfe has a full and fair opportunity to raise his constitutional concerns before the Oregon Court of Appeals on judicial review, and that judicial review of the civil enforcement proceedings constitutes a state proceeding functionally parallel in all material respects with this federal action, similarly treating the state proceedings at issue here as presumptively "unitary" will not offend any legal principle raised by or underlying *Younger* abstention.

Page 15 - FINDINGS AND RECOMMENDATION

U.S. 564, 577-579 (1973). Furthermore, the bias exception is available only where the plaintiff would suffer irreparable injury absent exercise of federal subject-matter jurisdiction, and Wolfe has made no showing tending to establish that this court has any greater power to remedy the reputational injury[4] Wolfe alleges to have suffered in consequence of the final order against him than that enjoyed by the Oregon Court of Appeals. *See Gibson*, 411 U.S. at 577, 577 n. 16.

## CONCLUSION

For the reasons set forth above, Brown's motion (#7) should be granted on jurisdictional grounds and denied as moot to the extent premised on any defect in the merits of Wolfe's claims. Accordingly, Wolfe's claims should be dismissed for lack of subject-matter jurisdiction. A final judgment should be prepared.

## SCHEDULING ORDER

The Findings and Recommendation will be referred to a district judge. Objections, if any, are due fourteen (14) days from service of the Findings and Recommendation. If no objections are filed, then the Findings and Recommendation will go under advisement on that date.

If objections are filed, then a response is due fourteen (14) days after being served with a

///

///

///

///

---

[4] To the extent Wolfe's appeal to reputational injury is premised on public statements issued by Brown while on the campaign trail, as opposed to reputational injury purportedly stemming from the final order itself, his argument is moreover entirely inapposite, in that those statements are not alleged to constitute a violation of Wolfe's due process rights and therefore would not be addressed in any remedy this court could offer.

Page 16 - FINDINGS AND RECOMMENDATION

copy of the objections. When the response is due or filed, whichever date is earlier, the Findings and Recommendation will go under advisement.

Dated this 12th day of March, 2014.

Honorable Paul Papak
United States Magistrate Judge

Page 17 - FINDINGS AND RECOMMENDATION